UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| FRED HALEY, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>COMMUNITY HOSPITAL, )<br>   Defendant. ) | CAUSE NO.: 2:21-CV-141-JVB-APR |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 46] filed by Defendant Community Hospital on August 29, 2022. Plaintiff Fred Haley filed a response on November 28, 2022, and Community Hospital filed a reply on January 6, 2023. For the following reasons, the Court denies the motion as to the religious accommodation claim and grants it as to the retaliation claim.

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying the evidence, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports

its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

## THE PARTIES' PRESENTATION OF EXHIBITS

Because Community Hospital objects to how Haley has presented his exhibits in opposition to summary judgment, the Court will address both parties' presentation of their exhibits.

Community Hospital filed its 25 exhibits in support of summary judgment as two attachments. Exhibit 1 is at docket entry 49-1, and Exhibits 2 through 25 are combined at docket entry 49-2. A list of the exhibits is provided at docket entry 49, but page numbers are not provided. Accordingly, when the Court wants to look at material cited as, for example, Defendant's Exhibit 16, the Court has to search through the 216 pages that are docket entry 49-2 to locate that Exhibit 16 begins on page 135 of that docket entry.

Haley, on the other hand, attached each exhibit (lettered A through I) separately on the docket at docket entries 63-3 through 63-11. Haley provides a list of exhibits at docket entry 63-2.

Haley docketed each exhibit with a descriptive title (such as "Exhibit Fred Haleys Affidavit," but not the exhibit letter. The list of exhibits provides both the descriptive title and the exhibit letter.

Community Hospital asks the Court, pursuant to Northern District of Indiana Local Rule 56-1(e), to find that Haley's statement of additional material facts is not supported and properly designated by citation and page number to evidence in the record. The Court declines to do so. The language of Local Rule 56-1(e) is discretionary, and Haley's evidence is presented in a manner such that it is less burdensome on the Court to locate each exhibit than the manner in which Community Hospital's evidence is presented.

Additionally, Haley's exhibit described as his deposition transcript contains only blank pages. This would be a significant problem, were it not for the fact that Community Hospital included a complete transcript of the deposition in their designation of evidence. The Court will not grant Community Hospital's request to find any fact supported by "Ex. D, Haley dep." as unsupported, because the evidence cited—Haley's deposition—is in the record at docket entry 49-1.

The Court prefers ruling on the merits of a motion, though there are times when procedural deficiencies are severe enough to lead to dispositive outcomes. The circumstances and deficiencies here, though, do not rise to that level.

### DEPOSITION VS. AFFIDAVIT

Community Hospital argues that Haley has made statements in his affidavit that conflict with statement made at his deposition. As an initial matter, Community Hospital has identified this but has not requested any specific relief in regard to this matter.

"Evidence presented in a self-serving affidavit . . . is enough to thwart a summary judgment motion, unless it fails to meet the usual requirements of any other form of evidence at the summary

judgment stage." *Foster v. PNC Bank, Nat'l Assoc.*, 52 F.4th 315, 320 (7th Cir. 2022). However, the Court may disregard a "sham" affidavit, which is generally one made that contradicts prior sworn testimony. *James v. Hale*, 959 F.3d 307 (7th Cir. 2020).

Community Hospital identifies paragraphs 7, 8, 19, 31, and 34 of Haley's affidavit as conflicting with his deposition testimony. Of these paragraphs, the Court only cites to paragraph 19 in the below section on the material facts of this case. Community Hospital argues that Haley states in paragraph 19 that he was concerned about the vaccine ingredients but, at his deposition, Haley "repeatedly testified that he had no reason to believe that the vaccine contained pork or that Wolak and Daley were lying or deceiving him regarding the vaccine contents." (Rep. at 12, ECF No. 75). There is no direct conflict here. As the Court will address below, Haley identified his religious practice as being broader than just avoiding pork products. Haley could both be concerned that the vaccine contained ingredients that he should not take into his body as part of his religious observances and believe that there were no pork products in the vaccine.

Even if Community Hospital had asked the Court to strike this paragraph from the affidavit under the sham affidavit rule, the Court would decline to do so.

## MATERIAL FACTS

Community Hospital is a not-for-profit acute care hospital facility located in Munster, Indiana. (Brandt Aff. ¶ 5, ECF No. 49-2 at 100). On December 25, 2018, Haley submitted an application to Community Hospital for the part time position of Valet Service Attendant. (Def.'s Ex. 16, ECF No. 49-2 at 135-39). Because a Valet Service Attendant comes in frequent, direct contact with patients, it is important and necessary for an attendant to be vaccinated against the influenza virus in the absence of a medical or religious exemption. (Gardiner Aff. ¶¶ 10-11, ECF No. 49-2 at 97).

After an interview held in January 2019, Haley was emailed a Conditional Offer of Employment on February 18, 2019. (Def.'s Ex. 10, ECF No. 49-2 at 108). The offer explicitly stated that the offer "is contingent upon successful completion of the pre-employment drug screen." *Id.* The email also stated that "Employee Health will need your immunization records and proof of Flu shot." *Id.* Eventually, a tentative start date of March 4, 2019, was agreed upon. (Haley Aff. ¶ 18, ECF No. 63-3).

When Haley reported for his drug screen and tuberculosis test on February 19, 2019, he received a copy of Community Hospital's Influenza Vaccine Policy, a Religious Exemption Form, and a Medical Exemption form. (Wolak Aff. ¶ 19, ECF No. 49-2 at 86). The policy states that all employees must have an annual influenza vaccine or must receive an approved medical or religious exemption. (Def.'s Ex. 14 §1.0, ECF No. 49-2 at 120). New employees with a start date between November 1 and March 31 must receive the vaccine or receive an exemption prior to their first day of work. *Id.* at § 1.2. Requests for exemption are reviewed by the Exemption Review Team. *Id.* at § 3.2. Results of the exemption request determination are to be communicated to the requester in writing. *Id.* at § 3.2.3. There is a process to appeal an exemption decision. *Id.* at § 3.2.6.

Community Health's Employee Health Services is responsible for processing and documenting influenza vaccination or exemption for all covered personnel. *Id.* at § 5.1. For the 2018-2019 flu season, Community Hospital administered only the single dose Fluzone Quadrivalent vaccine, which does not contain pork or pork products, antibiotics, gelatin, thimerosal, or preservatives. (Wolak Aff. § 14, ECF No. 49-2 at 85-86).

On February 27, 2019, Haley spoke with Griselda Wolak, who was an Employee Health Department Registered Nurse for Community Hospital and had the job duty of administering the influenza vaccination to employees during the influenza season. (Wolak Aff. ¶¶ 3, 5, 26, ECF No.

49-2 at 84, 88). Haley informed Wolak that he would apply for a religious exemption to the vaccine. *Id.* at ¶ 26.

Haley submitted his exemption request on the Religious Exemption Form on March 1, 2019. (Daley Aff. ¶ 24, ECF No. 49-2 at 79). The form directs the reader to an attached letter from Pastor Henry Buie of the Israel of God, which reads, in part, as follows:

> We are writing to inform you that Fred Haley is a member of the Israel of God, and we keep the dietary law that is written in the eleven [*sic*] chapter of Leviticus, which identifies what animals we should and should not eat. Listed among those animals are pigs.
>
> We are compelled by the Word of God to abstain from pork or anything that contain pork products, or any other ingredients that is deemed unclean by the bible.
>
> We are asking you to please exempt Haley from taking this shot, unless there is an alternative that is free of pork product or any ingredients that is deemed by the bible as unclean.

(Def.'s Ex. 11 at 2, ECF No. 49-2 at 111).

At Haley's deposition, Haley testified that the influenza vaccine was a concern and that it would be objectionable to him if it contained pork or pork products.[1] (Haley Dep. 36:3-17, ECF No. 49-1). Haley stated that he "may have considered" taking the vaccine if he had received proof that the vaccine did not contain pork or pork products. *Id.* at 87:9-12. He also stated that it was "correct" that his only request was that he receive a vaccine without pork or pork products. *Id.* at 87:13-16. In his affidavit, Haley stated that his concern was that the vaccine "may contain items prohibited by Leviticus 11 and my faith." (Haley Aff. ¶ 19, ECF No. 63-3).

On March 1, 2019, Wolak informed Haley that Community Hospital's influenza vaccine did not contain pork or pork products in any form. (Wolak Aff. ¶ 30, ECF No. 49-2 at 88). During this conversation, Haley did not give Wolak any additional reason for declining the vaccine. *Id.* at

---

[1] The possible presence of pork or pork product was not denoted as being Haley's sole concern with the vaccine in this part of the deposition.

¶ 31. Wolak avers that Haley did not request a list of vaccine ingredients, *id.*, while Haley affirms that he requested the list of vaccine ingredients during this conversation. (Haley Aff. ¶ 22, ECF No. 63-3). Haley further states that Wolak told Haley she was not obligated to provide him with a list of the vaccine ingredients. *Id.*

Later on March 1, 2019, which was a Friday, Haley sent an email requesting written proof of the ingredients of the influenza vaccine. (Daley Aff. ¶ 33, ECF No. 49-2 at 81). Because the recipient, Community Hospital's Human Resource Department Recruiter Janice Daley, had already left for the day, Daley did not receive the email until Monday, March 4, 2019. *Id.* ¶¶ 4, 33.

Haley reported to Community Hospital on March 4, 2019, where Daley informed Haley that he was not exempt from the vaccine. (Haley Aff. ¶ 26, ECF No. 63-3). Haley asked Daley for a written list of the vaccine ingredients, but Daley "did not want to discuss the matter further." *Id.* at 27. Daley advised Haley that he could not proceed with the orientation as scheduled due to not receiving the vaccine. (Daley Aff. ¶ 34, ECF No. 49-2 at 81).

The Employee Health Department did not clear Haley for employment because he did not receive the influenza vaccine. (Wolak Aff. ¶ 21, ECF No. 49-2 at 87).

## ANALYSIS

Two claims are at issue here. The first is a claim for failure to accommodate Haley's religion. The second is a claim for retaliation for engaging in statutorily protected activity. The Court addresses each claim below in turn.

### A. Failure to Accommodate

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment, including refusal to hire, on the basis of religion. 42 U.S.C. § 2000e-2(a)(1). Religion includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Employers must

offer reasonable accommodations when a condition of employment conflicts with an employee's sincerely held religious belief. *Anderson v. U.S.F. Logistics (IMC Inc.*, 274 F.3d 470, 475 (7th Cir. 2001).

A plaintiff can survive a motion for summary judgment on a Title VII claim for failure to accommodate religion by using the burden shifting framework. *Dockery v. Maryville Acad.*, 379 F. Supp. 3d 704, 713 (N.D. Ill. 2019). First, it is the plaintiff's burden to establish a prima facie case, which is comprised of the following: (1) plaintiff's religious practice conflicts with an employment requirement, (2) the plaintiff brought the need for religious accommodation to the employer's attention, and (3) the unaccommodated religious practice was the basis for an adverse employment decision. *Mahran v. Advocate Christ Med. Ctr.*, 12 F.4th 708, 712 (7th Cir. 2021). If the plaintiff establishes the prima facie case, then the burden shifts to the defendant, who can respond by showing that any reasonable accommodation would cause an undue hardship, *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013), or by showing that it offered a reasonable accommodation that the plaintiff rejected. *E.E.O.C. v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir. 1996).

In the light most favorable to Haley, with all legitimate inferences drawn and all doubts resolved in his favor, the evidence presented precludes summary judgment on the failure to accommodate claim.

Haley has presented evidence that his religious practice is to avoid taking into his body material that Leviticus 11 deems to be unclean. He brought this matter to Community Hospital's attention through the religious exemption form and the letter he attached to it. The first two elements of the prima facie case are met.

Regarding the third element, the Court also finds that it is met. Haley's failure to receive the influenza vaccine, which he had been verbally informed did not contain pork or pork products, was the reason he was not hired, as Community Hospital's Employee Health Department did not clear him to work due to not receiving the vaccine. Abstaining from a vaccine containing unclean material was part of Haley's religious practice, as shown by Pastor Buie's letter. Community Hospital did not address all of the unclean materials in Leviticus 11, nor did they provide Haley with a list of the vaccine's ingredients so that he could make his own determination as to what Leviticus 11 had to say about the vaccine's ingredients. Instead, Community Hospital only addressed whether the vaccine contained pork products, assuming that the pork-free nature of the vaccine was sufficient to religiously accommodate Haley.

Thus, Community Hospital contends that it offered, and Haley refused, an accommodation of his religious beliefs. This argument hinges on a misreading of Pastor Buie's letter. Community Hospital is right to assert that the religious accommodation request "is clearly stated in his Pastor's letter." (Def.'s Resp. to Stmt. of Add'l Mat'l Facts, 5, ECF No. 76). Where Community Hospital is wrong is in regard to what that letter clearly states. Community Hospital says that the request is for a pork-free vaccine. *Id.* This is incorrect. The request is for a vaccine "free of pork product *or any ingredients that is deemed by the bible as unclean*," which, by implication, is broader than just pork products. (Def.'s Ex. 11, ECF No. 49-2 at 111). Community Hospital apparently assumed that Haley's interpretation of Leviticus 11 was that only pork products were unclean, but Community Hospital has provided no reason for the Court to accept Community Hospital's interpretation of Haley's religious beliefs and practices as definitive.

Certainly, much time and effort could have been saved if Haley had more specifically stated which ingredients he considers to be unclean under Leviticus 11. By providing only a citation to

9

Leviticus 11, Haley practically invited Community Hospital to engage in its own biblical interpretation of the passage, which has doubtlessly received more than one interpretation in the course of its existence. The time and effort would also have been saved if Community Hospital had recognized that Haley was in the better position to determine what his religion considers unclean and provided Haley with the requested list of vaccine ingredients.

Community Hospital states that the record is void as to the language or content of Leviticus 11 and that Haley has presented no evidence as to what Leviticus 11 prohibits. (Def.'s Resp. to Stmt. of Add'l Mat'l Facts, 3, ECF No. 76). If the Court accepts this argument, then it is questionable for Community Hospital to assert that the vaccine they offered does not conflict with Haley's religious practice regarding the undisclosed contents of Leviticus 11. Further, the Court is well within its authority to take judicial notice of Leviticus 11 in the New International Version translation and does so here.[2] *See* Fed. R. Evid. 201.

By this Court's reading, Leviticus 11 (in this translation) declares as unclean animals beyond just pigs, including animals that do not both have divided hooves and chew the cud (Leviticus 11:3-8); water creatures that do not have fins and scales (Leviticus 11:9-12); various birds (Leviticus 11:13-19); and flying insects that walk on all fours except for the locust, katydid, cricket, and grasshopper (Leviticus 11:20-23). There is also a prohibition on food that has come into contact with water from a clay pot into which a dead weasel, rat, great lizard, gecko, monitor lizard, wall lizard, skink, or chameleon has fallen. (Leviticus 11:29-34).

The Court does not presume to speak for the Israel of God community or Haley as to how they interpret or comply with what is written in Leviticus 11. Instead, the Court identifies these matters from Leviticus 11 to demonstrate that Community Hospital, by only stating that there were

---

[2] The Court is not aware of the preferred translation, if any, of Israel of God in general or Haley in particular.

10

no pork products in the vaccine, did not assure that the vaccine was acceptable within Haley's religious practices. Haley asked for an exemption from the vaccine unless there was a vaccine that did not contain any biblically unclean products, a wider category than just pork products.

Haley's unaccommodated religious practice of not taking biblically unclean materials into his body was the reason for Community Hospital not hiring Haley. Therefore, Haley has established a prima facie case.

Community Hospital has not argued that accommodating Haley would impose an undue hardship. It does argue that it offered Haley a reasonable accommodation by informing him that the vaccine does not contain pork products. As discussed above, however, Pastor Buie did not constrain the prohibited items to only pork products, so the accommodation offered did not put Haley on notice of whether receiving the vaccine would violate his religious practice. Community Hospital did not provide Haley with a list of the vaccine's ingredients, as requested, which would have enabled him to better determine whether the vaccine was acceptable to his religious practice. Community Hospital has not met its burden, so the Court denies summary judgment on this claim.

### B. Retaliation

Title VII of the Civil Rights Act of 1964 also prohibits retaliation in employment for engaging in protected activities. To withstand a motion for summary judgment, a plaintiff must show (1) they engaged in activity protected by Title VII, (2) they suffered an adverse action taken by the defendant employer, and (3) a causal connection between the protected activity and the adverse action. *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 472 (7th Cir. 2018). This is the articulation of the "direct" approach to showing that retaliation has occurred, and is the approach Haley uses in his response brief. The fundamental question is "could a reasonable trier of fact infer retaliation?" *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015).

Community Hospital does not challenge the first two elements but does argue that Haley cannot show the necessary causal connection. In the absence of direct evidence of a causal connection, circumstantial evidence can establish a causal connection. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012). Circumstantial evidence in this context includes "suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)).

Temporal proximity alone is generally insufficient to establish the causal connection, but there appears to be an exception when the adverse action follows "on the heels" of protected activity, which means occurring "within days, or at most, weeks." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). Haley submitted his written request for religious accommodation on Friday, March 1, 2019. He was not permitted to undergo orientation on Monday, March 4, 2019. The timing is close, but Haley's conditional offer of employment was only made on February 18, 2019, which is two weeks before Haley's tentative start date; all of the timing in this case is close.

Additionally, the evidence points to the conclusion that Community Hospital assumed it was accommodating Haley by providing a vaccine free of pork products. Haley has presented evidence that supports a conclusion that this assumption is incorrect, but he has not presented evidence to support a conclusion that Community Hospital did not actually believe it to be true and was instead a pretext to cover an ulterior motive, such as wishing to retaliate against Haley for requesting a religious exemption. As a result, Community Hospital believed that Haley did not require a religious exemption to the vaccine. With the exemption request not given, Haley was not

12

compliant with the vaccine policy and could therefore not commence working at Community Hospital under that policy.

The evidence, viewed as a whole, does not permit a reasonable trier of fact to believe that Haley was prevented from working at Community Hospital due to retaliation against him for requesting a religious accommodation. The Court grants summary judgment in favor of Community Hospital on this claim.

## CONCLUSION

Based on the above, the Court hereby **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment [DE 46]. The Court grants summary judgment on the retaliation claim and denies summary judgment on the failure to accommodate claim, which remains pending.

The Court **REFERS** this matter to Magistrate Judge Andrew P. Rodovich to hold a settlement conference. Unless directed otherwise by Judge Rodovich, the parties shall contact Judge Rodovich's chambers after seven days to arrange a time for the settlement conference.

SO ORDERED on January 24, 2023.

                                        s/ Joseph S. Van Bokkelen  
                                        JOSEPH S. VAN BOKKELEN, JUDGE  
                                        UNITED STATES DISTRICT COURT